UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

SUSAN BEYLO,

                Plaintiff,

                                 10-cv-00354

        v.                      (WGY)

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

                Defendant.

_____

WILLIAM G. YOUNG, United States District Judge[1]

### DECISION and ORDER

## I.    INTRODUCTION

Susan Beylo ("Beylo") brings this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner").  Beylo challenges the decision of the Administrative Law Judge (the "hearing officer") denying her application for Social Security Disability Insurance ("SSDI") benefits.  Beylo requests this Court grant her application for SSDI benefits or remand this case to the

---

[1] Of the District of Massachusetts, sitting by designation. Reassignment Order, ECF No. 12.

1

Commissioner for further proceedings. Compl. 2, ECF No. 1; Mem.
Facts Law Behalf Susan M. Beylo Pl. ("Beylo's Mem.") 13, ECF No.
8. The Commissioner requests this Court affirm the hearing
officer's decision and grant his motion for judgment on the
pleadings. Def.'s Br. Opp'n Pl.'s Br. Under General Order No. 18
("Commissioner's Mem.") 1, 25, ECF No. 10.

###### A. Procedural Posture

On April 3, 2007, Beylo filed a Title II application for
SSDI benefits, Beylo's Mem. 3, alleging disability for a period
beginning on March 30, 2007, Admin. R. 92, 105, ECF No. 6.
Beylo's application was initially denied on October 19, 2007, <u>id.</u>
at 10, and she filed a timely written request for a hearing on
November 13, 2007, Beylo's Mem. 3. Beylo testified at the
hearing held on June 11, 2009, via videoconference and was
represented by an attorney. Admin. R. 61-79. The hearing
officer issued an unfavorable decision on July 10, 2009, finding
that Beylo was not disabled. <u>Id.</u> at 7-21. Beylo subsequently
filed a timely request for review, <u>id.</u> at 6, 80-81, which was
denied by the Appeals Council on February 3, 2010, <u>id.</u> at 1-5.
On March 26, 2010, Beylo filed the present action with this Court
to review the decision of the Commissioner pursuant to 42 U.S.C.
§ 405(g). <u>See</u> Compl. The Commissioner filed an answer, Def.'s
Answer, ECF No. 5, and both parties filed briefs, Beylo's Mem.;
Commissioner's Mem.

## B.    Factual Background

Beylo was born in 1960 and was forty-six years old when she applied for benefits.  Admin. R. 20, 65.  She has an eleventh grade education and no general equivalency diploma, id. at 65, although she has also reported completing the twelfth grade, id. at 98.  Beylo's prior employments were as a food-service worker for approximately fifteen years, and then, as a psychiatric hospital aide, a light to medium exertion occupation which she had for seven years.  See id. at 65-68, 120-21.  As a therapy aide, she had to stand and walk for four to six hours in an eight-hour work day, and regularly lifted thirty-five to forty pounds.  Id. at 121.  Beylo stopped working on March 30, 2007. Id. at 12, 92.  She has a history of numerous physical impairments.

### 1.    Physical Impairments

Beylo exhibits degenerative disc disease, internal derangement and osteoarthritis of the knees, residuals from a left ankle injury, heel spurs, plantar fasciitis, varicose veins, obesity, an umbilical hernia, and other ailments.  Id. at 199-200, 209-10.

### a.    Degenerative Disc Disease

Dr. Kamlesh S. Desai, M.D. ("Dr. Desai"), a podiatrist, is Beylo's treating physician since March 30, 2007.  Id. at 75-76, 276-79.  Dr. Desai diagnosed her with lumbar syndrome secondary

to a work-related injury which occurred in 1989.  Id. at 277.
Beylo reported having difficulties working due to lower-back pain
which radiated into both legs and was aggravated by prolonged
standing, walking, bending, lifting, and twisting activities.
Id.  On physical examination, Beylo had lumbar spine tenderness
at the L4-L5 and L5-S1 segments, and the pain "markedly limited"
the range of her motion.  Id.  Dr. Desai recommended Beylo cease
work, use local modalities and medications at home, and obtain
authorization for additional investigation regarding her lumbar-
spine.  Id.

On April 13, 2007, Beylo reported to Dr. Desai that her back
pain persisted despite her decrease in activity.  Id. at 274.  On
June 7, 2007, Beylo reported that rest, medications, and local
modalities had improved her back symptoms.  Id. at 270.  She also
reported that exercise helped relieve her lumbar pain up to a
point.  Id.  Her back pain, however, persisted limiting her
ability to engage in activity requiring prolonged sitting,
bending, driving, lifting, and twisting.  Id.  At this point, Dr.
Desai described Beylo as "temporarily totally disabled."  Id.

Beylo's symptoms remained the same throughout 2007 and she
reported to Dr. Desai that the "[b]ack pain is significantly
worse than the leg pain."  Id. at 262.  The followup
consultations during the following year showed no improvement in
Beylo's condition and on May 20, 2008, Dr. Desai opined that

Beylo's conditions seemed to be permanent. Id. at 245. On April 7, 2009, Dr. Desai's final diagnosis was "[c]hronic lumbar syndrome with intermittent radiculopathy secondary to disc degeneration and disc herniation, L4/5 and L5-S1." Id. at 376.

**b. Internal Derangement and Osteoarthritis of the Knees**

On September 6, 2005, Beylo underwent an MRI of her left and right knees. Id. at 227-30. The MRI reports showed medial meniscus degeneration with small tears in both knees. Id. On March 30, 2007, Dr. Desai diagnosed Beylo with internal derangement of both knees with progressive traumatic osteoarthritis resulting from a work-related injury which occurred in 2002. Id. at 279. Beylo reported having pain in both knees and that it was aggravated by prolonged standing, walking, stair climbing, and other physical activities. Id. On physical examination, Beylo's ability to flex and rotate her knees was limited by pain, and her flexion was limited to 120 degrees. Id. An x-ray revealed evidence of medial compartment and patellofemoral osteoarthritis. Id. Dr. Desai recommended leg exercising, over-the-counter medications, and weight loss. Id. at 278. Dr. Dersai also noted that surgical treatment would be necessary in the future. Id.

On June 7, 2007, Beylo reported continued pain, but rest, heating pads, and medication helped relieve it to a point. Id. at 271. On that occasion, Beylo could extend her knees fully and

flex to approximately 130 degrees.  <u>Id.</u>  In August 2007, Dr.
Desai observed that although some days the pain "somewhat"
improved, Beylo continued showing significant symptoms, thus he
noted that Beylo "remain[ed] temporarily totally disabled."  <u>Id.</u>
at 266, 268-69.

On November 19, 2007, Beylo saw Daria Lisick, RPA-C
("Lisick"), a physician's assistant in Dr. Desai's office, for
pain and swelling in both her left knee and ankle.  <u>Id.</u> at 260.
Her left knee motion was limited to seventy-five degrees.  <u>Id.</u>
Lisick's impression was traumatic arthritis of the left knee.
<u>Id.</u>

The followup consultations during the years 2007 and 2008
showed no improvement of Beylo's knee condition and on October
23, 2008, Dr. Desai opined that Beylo had reached her maximum
medical improvement.  <u>Id.</u> at 318.  Beylo's final diagnosis was
"[m]eniscal derangement with patellofemoral osteoarthritis and
chondromalacia of the patella of both knees."  <u>Id.</u>  On February
24, 2009, Dr. Desai authorized surgery of her left knee.  <u>Id.</u> at
314.  During the hearing in June 2009, Beylo reported that her
physicians were looking to schedule total knee replacements, one
at a time.  <u>Id.</u> at 69.

The record and the hearing officer's decision also contains
Beylo's visit on October 12, 2007, to Dr. Justine Magurno ("Dr.
Magurno"), a consultative examiner.  Admin. R. 199-205.  During

the consultative examination Beylo claimed she could not flex her knee beyond 20 degrees, pain in right leg during straight-leg-raising test, and muscle weakness in upper and lower extremities. Id. at 199-204. These limitations somewhat contradict Dr. Desai's observations. Compare id. at 246, 264, 271, 314, 316 (noting that Beylo could flex her knee 120 to 130 degrees), and id. at 263 (examining Beylo a day before Dr. Magurno, the straight-leg-raising test was negative), and id. at 258, 262, 266 (observing that legs had full weightbearing capacity) with id. at 266 (noting that "[r]ange of motion of the knee as well as the lumbar spine is limited and painful").

### c.  Left Ankle

Beylo stated that she has ankle problems related to a knee injury sustained in 2002. Id. at 260. An x-ray taken in 2004 showed only some spurs on her left ankle, which were not a result of the injury. Id. at 167. On November 19, 2007, Lisick saw Beylo for pain and swelling in both her left knee and ankle. Id. at 260. An x-ray showed some mild spurring in her left ankle. Id. On December 14, 2007, Beylo reported continued pain in her ankle and Dr. Desai recommended an MRI. Id. at 258. She underwent an MRI on February 4, 2008, which showed ligament injuries, tears, fractures, and distended veins in her left ankle. Id. at 248-49, 225-26. On February 21, 2008, Beylo continued to complain of pain in her left ankle. Id. at 255.

7

### d. Other Impairments

Beylo has obesity problems.  <u>Id.</u> at 334-37.  She weighed 281 pounds in April 2007, <u>id.</u> at 303, and over the next years her weight fluctuated around 265 pounds, <u>id.</u> at 299, 316, 334.  Beylo was diagnosed with diabetes in 2004, <u>id.</u> at 163-64, and she has been "fairly non-complaint with her diabetes treatment plan," <u>id.</u> at 299, 301.  Additionally, on May 2007, a CT scan revealed a small umbilical hernia.  <u>Id.</u> at 301.  Beylo is also being treated for sleep apnea, <u>id.</u> at 233, 334, 336.

Beylo also exhibits plantar fasciitis for which she has been treated for several years, <u>id.</u> at 342.  On March 12, 2009, Dr. Diane Bray, D.P.M., noted that Beylo continued experiencing tenderness at the plantar fascia.  <u>Id.</u> at 345.

Since at least 2003, Beylo has been exhibiting varicose veins in her lower extremities.  <u>Id.</u> at 187.  The varicose veins were small and did not need to be stripped, thus the use of elastic support stockings was recommended.  <u>Id.</u>  The elastic support stocking treatment worked and Beylo did not report any particular pain in the following years.  <u>See</u> <u>id.</u> at 183-84.

### 2. Testimony

Beylo testified at a hearing held on June 11, 2009, via videoconference.  <u>Id.</u> at 61-79.  During the hearing, she described her education, vocational training, and prior work history as a mental health therapy aid.  <u>Id.</u> at 65-68.  She also

described her physical pain, explaining its location and intensity. Id. at 68-69. She explained her impairments, including the lower back pain that radiates to her legs, her knee problems, the medications she was taking, and some episodes of depression. Id. at 68-72. Beylo reported that her medications caused her side effects like drowsiness, stomach pain, nausea, and diarrhea. Id. at 70-72.

On a regular day, Beylo does the dishes and small tasks around the house; the rest of the household work is done primarily by her daughter. Id. at 72-73. Beylo testified that her pain prohibits her from walking or standing for more than seven minutes before needing to stop and rest. Id. at 73. She explained that she needed to change positions while sitting every five to ten minutes. Id. Beylo stated that she is able to lift a half-gallon milk container, but no more. Id. at 74. At night she sleeps six to seven hours and wakes two to three times because of her back pain and apnea. Id. Finally, she testified that she had been terminated from her job for not "com[ing] back in time" from her injury. Id. at 77.

## II. LEGAL STANDARD

### A. Standard of Review

Federal district courts have the power to affirm, modify, or reverse a decision of the Commissioner. 42 U.S.C. § 405(g); Laven v. Astrue, No. 1:10-CV-01360(NPM), 2011 WL 6318360, at *3

(N.D.N.Y. Dec. 15, 2011) (McCurn, J.). In general, the factual findings of the administrative officer "are conclusive unless they are not supported by substantial evidence." <u>Diaz</u> v. <u>Shalala</u>, 59 F.3d 307, 312 (2d Cir. 1995) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pratts</u> v. <u>Chater</u>, 94 F.3d 34, 37 (2d Cir. 1996) (quoting <u>Richardson</u> v. <u>Perales</u>, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).

Legal decisions are reviewed de novo, and "[w]here there is a reasonable doubt as to whether the Commissioner applied the proper legal standards," even if the ultimate decision may be "arguably supported by substantial evidence," the Commissioners decision may not be affirmed. <u>Crysler</u> v. <u>Astrue</u>, 563 F. Supp. 2d 418, 428 (N.D.N.Y. 2008) (Kahn, J.) (citing <u>Martone</u> v. <u>Apfel</u>, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.)). The court may not "affirm an administrative action on grounds different from those considered by the agency." <u>Burgess</u> v. <u>Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008) (quoting <u>Melville</u> v. <u>Apfel</u>, 198 F.3d 45, 52 (2d Cir. 1999)).

### B.   Social Security Disability Standard

A claimant is disabled for the purposes of SSDI benefits eligibility if the claimant is "[unable] to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); accord Petrie v. Astrue, 412 F. App'x 401, 404 (2d Cir. 2011).

The Social Security Administration has promulgated a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or medically equals an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1, and meets the duration requirement; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) whether the impairment prevents the claimant from doing any other work considering the claimant's age, education, and work experience. Id.; see Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003).

The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden on the last step. Burgess, 537 F.3d at 128. The steps ought be followed in order. 20 C.F.R. § 404.1520(a).

## III.   THE HEARING OFFICER'S DECISION

The hearing officer first determined that Beylo had not

engaged in substantial gainful activity since March 30, 2007. Admin. R. 12. The hearing officer then found that Beylo's degenerative disc disease, internal derangement and osteoarthritis of the knees, residuals from a left ankle injury, heel spurs, plantar fasciitis, varicose veins, obesity, and umbilical hernia were severe impairments that in combination interfered with Beylo's capacities for lifting, carrying, standing, and walking. Id. at 12-13. Moreover, Beylo's impairments of sleep apnea, diabetes, and depression caused only minimal limitations to her ability to perform work activities. Id. at 13. As to the third step, the hearing officer found that Beylo's impairments do not meet or medically equal one of the impairments listed in the regulations. Id. at 13-14. As to the fourth step, the hearing officer assessed Beylo's residual functional capacity finding that she could not engage in "repetitive/heavier bending, lifting and twisting, and was unable to perform the duties of her usual work." Id. at 19. This conclusion was based on the controlling weight given to Dr. Desai's diagnosis and the uncontradicted evidence in the laboratories and clinical records. Id. Nonetheless, the hearing officer found that Beylo's "statements considering the intensity, persistence and limiting effects of [the] symptoms were not credible to the extent that they are inconsistent" with her residual functional capacity to perform unskilled sedentary work.

Id. at 16, 20.  The hearing officer noted that Beylo's daily
routine suggested a "greater sitting capacity."  Id. at 19.

The hearing officer also gave great weight to the opinion of
Holly Sensenig ("Sensenig"), Beylo's therapist, who opined that
Beylo had the mental capacity to "follow simple directions and
make personal-social adjustments to a fair extent."  Id. at 19-
20.  Conversely, the hearing officer discredited Dr. Desai and
Sensenig's opinions as to their legal conclusion that Beylo was
"disabled," because it is a determination reserved for the
hearing officer.  Id.  The hearing officer also gave limited
weight to the consultative examiner, Dr. Magurno, because "many
of the abnormalities that the claimant demonstrated when the [Dr.
Magurno] examined her were atypical" and inconsistent with Dr.
Desai's treatment records.  Id. at 19.  Similarly, the hearing
officer did not give great weight to the State-agency's
disability analyst, H. Janneh ("Janneh"), who reviewed Beylo's
record and stated that she had the residual functional capacity
to perform sedentary work.  Id.  As to the fifth step, the
hearing officer concluded that Beylo's residual functional
capacity met the medical-vocational rules to perform the
exertional demands of unskilled sedentary work.  Id. at 21.
Accordingly, the hearing officer found that Beylo was not
disabled from March 30, 2007 through July 10, 2009.  Id.

## IV.  ANALYSIS

### A.  Contentions

Beylo does not dispute the hearing officer's conclusions in steps one through three of his five-step sequential evaluation. Beylo's Mem. 8.  The issues presented for review are: 1) whether the hearing officer's finding of residual functional capacity was supported by substantial evidence; and 2) whether the hearing officer failed as matter of law to sustain his burden at step five of the sequential analysis prescribed by 20 C.F.R. § 404.1520.  Id. at 2.

### B.  The Residual Functional Capacity Determination

The hearing officer's residual functional capacity determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).  It is, however, "not require[d] that [the hearing officer] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."  Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983); see also Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) (rejecting the proposition that the hearing officer must explicitly reconcile every shred of conflicting testimony).

In this case, the hearing officer found that Beylo "has the

14

residual functional capacity to perform unskilled sedentary work." Admin. R. 14. Beylo argues that the residual functional capacity determination cannot be sustained because it is the product of numerous errors. Beylo's Mem. 8-11.

### 1. Disability Is a Legal Conclusion Reserved to the Commissioner

Beylo contends that the hearing officer erred in discounting Dr. Desai's opinion as to the legal conclusion of disability. Beylo's Mem. 9-10. This argument is unavailing.

It is well settled law that "[a] statement by a doctor that an individual is 'disabled' does not constitute a determination of disability within the meaning of the Social Security Act; the latter determination is a legal, not a medical, one." Michels v. Astrue, 297 F. App'x 74, 76 (2nd Cir. 2008) (citing Shaw v. Chater, 221 F.3d 126, 131 (2nd Cir. 2000)).

Here, it was proper for the hearing officer to discount Dr. Desai's various statements that Beylo was "disabled" because disability is a legal conclusion reserved to the Commissioner. 20 C.F.R. § 404.1527(e).

### 2. The Hearing Officer Did Not Err by Discounting Dr. Magurno's Opinion

Beylo alleges that the hearing officer erred by discounting Dr. Magurno's opinion. Beylo's Mem. 9-10. Beylo's argument is unavailing.

It is the role of the hearing officer to resolve the

conflicts in the medical records. <u>Burgess</u>, 537 F.3d at 128. In resolving the conflicting medical opinions the hearing officer must give more weight to the opinion of the treating physician than to the non-treating one. 20 C.F.R. § 404.1527(c)(1).

Here, the hearing officer properly gave limited weight to Dr. Magurno's assessment because many of the abnormalities found on the day of that examination were "atypical" and not present in prior medical reports. Admin. R. 19. Dr. Desai treated Beylo for two years and the hearing officer determined that his opinion as a treating physician was entitled to more weight than Dr. Magurno's. <u>Id.</u> The hearing officer concluded that the limitations found by Dr. Magurno "were based on exaggerated symptoms presented by [Beylo] during the examination," Commissioner's Mem. 23, not present on "the numerous examinations done for treatment purposes," Admin. R. 19; <u>compare</u> <u>id.</u> at 204, <u>with</u> <u>id.</u> at 246, 264, 271, 314, 316. Therefore, the hearing officer properly gave limited weight to Dr. Magurno's assessment.

### 3. Beylo's Sitting, Standing, and Walking Residual Capacity

Beylo alleges that the hearing officer failed to reference whether Beylo could perform the full range of unskilled sedentary work, Beylo's Mem. 9, and that he "tos[sed] aside the opinions of all examining physicians and then [went] and rel[ied] upon [Janneh] who has never seen or physically examined [Beylo]," <u>id.</u> at 10. This contention is persuasive to the extent that the

16

hearing officer failed to reference what range of unskilled sedentary work Beylo could perform. Specifically, the record is devoid of any medical opinion to support the hearing officer's finding that Beylo had the capacity to stand for two hours and sit for more than six hours. Other than Janneh's assessment, which the hearing officer did not credit, there is no evidence to support that Beylo could stand for two hours and sit for more than six hours.

"'Sedentary work . . . generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day.'" Rosa v. Callahan, 168 F.3d 72, 78 n.3 (2nd Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 46 (2nd Cir. 1996)); SSR 96-9p, 1996 WL 374185, at *3; SSR 83-10, 1983 WL 31251, at *5 (explaining that sedentary work mainly involves sitting). When the full range of sedentary work might be eroded by limitations on standing and sitting, "[t]he [residual functional capacity] assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." Overbaugh v. Astrue, No. 6:07-CV-0261 (NAM/DEP), 2010 WL 1171203, at *8-9 (N.D.N.Y. Mar. 22, 2010) (Mordue, J.) (quoting SSR 96-9p, 1996 WL 374185, at *7 ("When the record indicates that a plaintiff has significant limitations with regard to his ability to sit for extended periods of time, the [hearing officer] should engage in a detailed discussion concerning plaintiff's restrictions));

Barkley v. Commissioner of Soc. Sec., No. 7:06-CV-730, 2008 WL
2949386, at *12 (N.D.N.Y. July 30, 2008) (Hurd, J.).[2]

Here, although the hearing officer found that Beylo's
impairments interfered with her "capacities for lifting,
carrying, standing and walking," Admin. R. 13, he did not discuss
for how long Beylo could sit, stand, or walk.  The hearing
officer discounted Beylo's testimony, id. at 16, and thus gave
little weight to her statement that "she only could comfortably
lift/carry items weighing up to the equivalent of a half a gallon
of milk, walk or stand about 5-10 consecutive minutes and sit a
maximum of 15 minutes at a time," id. at 15.  Yet, based solely
on Beylo's testimony and her description of her daily routine,
the hearing officer concluded that she had a great sitting

_____

[2] As to the necessity to alternate sitting and standing the
Social Security Rulings provide that:

> In some disability claims, the medical facts lead to an
> assessment of [residual functional capacity] which is
> compatible with the performance of either sedentary or
> light work except that the person must alternate periods
> of sitting and standing.  The individual may be able to
> sit for a time, but must then get up and stand or walk
> for awhile before returning to sitting.  Such an
> individual is not functionally capable of doing either
> the prolonged sitting contemplated in the definition of
> sedentary work (and for the relatively few light jobs
> which are performed primarily in a seated position) or
> the prolonged standing or walking contemplated for most
> light work.  (Persons who can adjust to any need to vary
> sitting and standing by doing so at breaks, lunch
> periods, etc., would still be able to perform a defined
> range of work.)

SSR 83-12, 1983 WL 31253, at *4.

capacity. Id. at 19 (concluding that Beylo's "acknowledged routine suggests the greater sitting capacity found herein.").[3]

With one exception, the record is devoid of any evidence that explicitly states the time Beylo could sit, stand, or walk the required time to perform the full range of sedentary work. That exception is the assessment made by the non-examining State-agency analyst Janneh. Id. at 209. The hearing officer, however, gave little weight to Janneh's opinion because "the source was not identified as a medical expert." Id. at 19; Commissioner's Mem. 23. Therefore, the analyst's assessment is not sufficient evidence to support the hearing officer's determination. Weiss v. Astrue, No. 1:07-CV-1039, 2009 WL 2843249, at *5 (N.D.N.Y. Aug. 31, 2009) (Kahn, J.) (approving magistrate judge's opinion that a non-examining State-agency analyst opinion "cannot be considered substantial evidence sufficient to support the [hearing officer]'s determination" where the analyst's findings that claimant can sit for six hours a day "were not supported by any citation to the medical records and are directly contradicted by the assessment of Plaintiff's

---

[3] Beylo's testimony about her daily activities does not support the "greater sitting capacity" alluded to by the hearing officer. Beylo testified that she watches television laying down, Admin. R. 72, and when asked about "how long are you able to sit before you're uncomfortable and need to change position?" she answered from five to ten minutes, id. at 73. Beylo requested to stand up in her hearing after fifteen minutes. Id.

treating physician" (citing <u>Griffith</u> v. <u>Astrue</u>, No. 08-CV-6004, 2009 WL 909630, at *9 (W.D.N.Y. July 27, 2009) (Siragusa, J.) ("The State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence"))); <u>see also</u> <u>McClean</u> v. <u>Astrue</u>, No. 04-CV-1425, 2009 WL 1918397, at *4 n.2 (E.D.N.Y. June 30, 2009) (Townes, J.).

Instead, the Commissioner argues that the hearing officer's finding was supported by Dr. Desai's opinion. Commissioner's Mem. 19. The record shows that the hearing officer gave great weight to the "well supported" and "not contradicted" opinion of Dr. Desai, who concluded that Beylo "should avoid repetitive/heavier bending, lifting and twisting, and was unable to perform the duties of her usual work." Admin. R. 19. These restrictions, the Commissioner argues, do not put any restriction on sitting, a limitation that had appeared in an earlier opinion of Dr. Desai. <u>Compare</u> <u>id.</u> at 264, <u>with</u> <u>id.</u> at 322.

This argument cannot prevail because the hearing officer failed to make a "specific" assessment of Beylo's need to alternate sitting and standing. <u>Weiss</u>, 2009 WL 2843249, at *5 ("[T]he [hearing officer]'s failure to explain and support her finding with respect to Plaintiff's ability to sit for prolonged periods cannot be considered harmless error and is cause for remand."); SSR 96-9p, 1996 WL 374185, at *7.

Furthermore, the hearing officer's conclusion as to Beylo's "greater sitting capacity" is contradicted by Dr. Desai's opinion. The record does not show that Dr. Desai removed the prolonged sitting, standing, and walking restrictions as the Commissioner argues. While on July 18, 2008, Dr. Desai did not mention the "prolonged sitting" restriction, he did recommend Beylo "avoid activities that obviously aggravate the symptoms." Admin. R. 322. The record shows that Dr. Desai had observed an array of aggravating symptoms, which included prolonged sitting, standing, and walking. For instance, on October 23, 2008, Dr. Desai opined that Beylo was reaching her maximum medical improvement and recommended avoiding bending, lifting, twisting, prolonged standing, walking, and getting in and out of a car. Id. at 318; see also id. at 245 (noting on May 20, 2008 that "[d]ay-to-day activities still affect the area significantly"). On October 2007, he recommended Beylo avoid prolonged sitting. Id. at 263-64. A couple of months before, Dr. Desai included "prolonged sitting, driving," getting in and out of the car, getting up from low chair, and prolonged walking as aggravating symptoms. Id. at 271-72; see also id. at 277 (reporting on March 30, 2007, that Beylo's symptoms aggravate with prolonged standing and walking). Yet, Beylo was not totally precluded from walking. Dr. Desai recommended that she walk as part of a conservative treatment regime, id. at 246, and on occasion Beylo reported

doing some gentle exercise, id. at 266, 272, 279, 376, but also reported that prolonged walks still caused her pain, id. at 264, 271, 277, 318.  The hearing officer's finding as to Beylo's "greater sitting capacity" was actually contradicted by Dr. Desai's opinion and this itself is a ground for remand.  Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.") (citation omitted).

Therefore, the issue regarding Beylo's sitting, standing, and walking residual capacity is remanded.  This Court rules that the great weight given to Dr. Desai's opinion and the discounted credit given to Beylo's testimony and Janneh's assessment do not provide substantial evidence for the hearing officer to find that Beylo retained a residual functional capacity to perform unskilled sedentary work consistent with up to two hours of standing or walking and six hours of sitting in an eight-hour work day.

**C.   Step Five of the Sequential Analysis Is Premised on Beylo's Residual Functional Capacity**

At the final step of the sequential analysis, the hearing officer determines whether a claimant who cannot do past relevant work can make an adjustment to other work.  20 C.F.R. § 404.1520(a)(4)(v).  The hearing officer must consider the claimant's residual functional capacity (as determined at step four) in combination with her age, education, and work

experience.  Id.; id. § 404.1560(c)(2) (providing that the
hearing officer is "not responsible for providing additional
evidence about [claimant's] residual functional capacity because
[the hearing officer] will use the same residual functional
capacity assessment . . . used to determine if [claimant] can do
[the] past relevant work").  If the claimant can make an
adjustment to other work, she is not entitled to disability
benefits.  Id. § 404.1520(a)(4)(v).  If she cannot adjust, the
hearing officer will find that she is disabled.  Id.

    The hearing officer bears the burden of proof at this step
of the disability determination.  Burgess, 537 F.3d at 128.  In
order to efficiently issue decisions and avoid expert testimony
in every case, hearing officers frequently rely on the Medical-
Vocational Guidelines ("the Grid") to determine whether there are
jobs in which claimants can adjust.  See 20 C.F.R. Part 404,
Subpart P, App. 2.  The Grid reflects "the major functional and
vocational patterns" in cases that cannot be evaluated on medical
considerations alone."  Id. at 200.00.  "Where the findings of
fact made with respect to a particular individual's vocational
factors and residual functional capacity coincide with all of the
criteria of a particular rule, the rule directs a conclusion as
to whether the individual is or is not disabled."  Id.  If the
hearing officer's findings of fact do not correspond with a
particular rule in the Grid, the Grid does not direct a

conclusion of disabled or not disabled.  Id.  Thus the hearing
officer has to analyze whether the "vocational factors (i.e.,
age, education, and work experience) in combination with the
individual's residual functional capacity" allows the claimant to
perform unskilled sedentary work.  Id.

Generally, the "appropriateness of applying 'the grid
guidelines and the necessity for expert testimony must be
determined on a case-by-base basis.'"  Webb v. Astrue, No. 3:11-
CV-94 (GLS), 2012 WL 589660, at *5 (N.D.N.Y. Feb. 22, 2012)
(Sharpe, C.J.) (quoting Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir.
1986)).  The Grid, however, does not take into account a
claimant's nonexertional impairments, and therefore "the [hearing
officer] should consult with a vocational expert before making a
determination as to disability."  Id.  In short, when a claimant
has a significant nonexertional impairment, the Social Security
Administration may not apply the Grid.  Rosa, 168 F.3d at 82;
Bapp, 802 F.2d at 605; Comins v. Astrue, No. 5:05-CV-
556(FJS/GHL), 2009 WL 819379, at *8 (N.D.N.Y. Mar. 26, 2009)
(Scullin, J.) ("When 'a claimant's nonexertional impairments
significantly diminish (his or) her ability to work, the
Commissioner should be required to present the testimony of a
vocational expert or other evidence concerning the existence of
jobs in the national economy for an individual with claimant's
limitations.'" (quoting Dwyer v. Apfel, 23 F. Supp. 2d 223, 229-

30 (N.D.N.Y. 1998) (Hurd, J.)) aff'd, 374 F. App'x 147 (2d Cir. 2010)). Still, "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance" on the Grid. Bapp, 802 F.2d at 603.

Here, the hearing officer concluded that the combination of Beylo's residual functional capacity with her age, education, and work experience did not occasion a significant loss in her ability to work. Admin. R. 21. This conclusion is premised on the unsupported evidence that Beylo retained a residual functional capacity to perform an unskilled sedentary work consistent with up to two hours of standing or walking and six hours of sitting in an eight-hour work day.[4] See supra Section IV(B)(3). Upon remand of this issue, the hearing officer may find that her ability to perform sedentary work is significantly diminished; thus it may be appropriate to produce a vocational expert. Pratts, 94 F.3d at 39; Vanhorn v. Astrue, No. 10-CV-1023 (GLS/VEB), 2012 WL 1415415, at *10 (N.D.N.Y. Apr. 24, 2012) (Bianchini, M.J.); Overbaugh, 2010 WL 1171203, at *9 ("As the [hearing officer] failed to properly assess the [residual functional capacity], the findings made at the fifth step of the sequential analysis are affected."). Therefore, the vocational

---

[4] It is otherwise undisputed that Beylo had the mental capacity to perform an unskilled sedentary work. See Beylo's Mem. 11-12.

expert consultation ought also be revisited on remand because this Court is unable to reach a conclusion until the hearing officer determines whether Beylo's sitting, walking, and standing capacity significantly limits her range of sedentary work.

**V.    CONCLUSION**

Wherefore, for the foregoing reasons, it is hereby

ORDERED that the Commissioner's motion for judgment on the pleadings, ECF No. 10, is DENIED; and it is further

ORDERED that the Commissioner's determination is REVERSED; and it is further

ORDERED that the hearing officer's decision denying disability benefits is REMANDED for further administrative proceedings consistent with this opinion.


**IT IS SO ORDERED.**

**Dated:** September 27, 2012


  /s/ William G. Young
**WILLIAM G. YOUNG**
**U.S. DISTRICT JUDGE**